# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### AT LEXINGTON

**BROOKDALE SENIOR LIVING, INC.;**
**BROOKDALE SENIOR LIVING COMMUNITIES, INC;**
**BLC LEXINGTON SNF, LLC; and**
**AMERICAN RETIREMENT CORPORATION**

      **Plaintiffs,**

**V.**

**CINDY WALKER, as GUARDIAN of**
**LARRY TRIMMER, an incapacitated person.**

      **Defendant.**

**CIVIL NO. 5:15-cv-206-KKC**

**OPINION AND ORDER**

\*\*\* \*\*\* \*\*\*

This matter is before the Court on two motions: the Defendant's Motion to Dismiss [DE 4] and the Plaintiffs' Motion to Compel Arbitration. [DE 6.] The Defendant seeks dismissal of this matter for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), for failure to join a necessary party pursuant to Rule 12(b)(7), and for failure to state a claim under Rule 12(b)(6). The Defendant also moves the Court to abstain from exercising jurisdiction under the *Colorado River* abstention doctrine. For the reasons stated herein, the Court will grant the Plaintiffs' Motion to Compel Arbitration and deny the Defendant's Motion to Dismiss.

## I.    BACKGROUND

Larry Trimmer has been a resident of the Richmond Place Rehabilitation and Health Center, a nursing facility located in Lexington, Kentucky, since November 14, 2014. [DE 4-1 at 1.] While residing at the facility, Mr. Trimmer allegedly suffered physical and

emotional injuries due to inadequate care. [DE 4-1 at 1.] Cindy Walker was appointed the Emergency Limited Guardian and Conservator of Larry Trimmer before his admission to the nursing facility. [DE 6-2, Exhibit B, Order for Emergency Appointment of Fiduciary]. She filed a state court action against the Plaintiffs, alleging claims for negligence, medical negligence, corporate negligence, and violation of long term care resident's rights. [DE 4-1 at 1-2.] In addition to the named Plaintiffs in the action pending before this Court, the Defendant named Jamie Gitzinger, in his capacity as the Administrator of Richmond Place Rehabilitation and Health Center, and Benita Boggs Dickerson, also in her capacity as Administrator of the Richmond Place Rehabilitation and Health Center (collectively, the "Administrators"), as defendants in her state court action. [DE 4-1 at 2.]

In response to the action filed in the Fayette Circuit Court, the Plaintiffs filed the instant suit, asserting that the Defendant's state court claims are subject to an Arbitration Provision within the Admission Agreement that Cindy Walker signed on behalf of Mr. Trimmer upon his admission to the nursing facility. [DE 1, Complaint.] Notably, the Administrators are not included as Plaintiffs in the action before this Court. The Plaintiffs invoke this Court's diversity jurisdiction and seek relief under § 4 of the Federal Arbitration Act (FAA).

The Arbitration Provision in the Admission Agreement provides, in relevant part:

> Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Rehabilitation/Skilled Nursing Center, excluding any action for eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption, and/or voidability of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages, and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement**

2

> **further understand that a judge and/or jury will <u>not</u> decide their case.**"

[DE 6-1, Exhibit A, Admission Agreement at p.12, ¶ VIII.A.1.] (emphasis in original). The Plaintiffs assert that this arbitration agreement covers all of the Defendant's state court claims. As such, the Plaintiffs seek an order from this Court compelling the Defendant to submit her claims to binding arbitration and enjoining her from proceeding wither her action in the Fayette Circuit Court. The Defendant then filed her Motion to Dismiss, and the Plaintiffs filed their Motion to Compel Arbitration, both of which are now before this Court.

## II.    ANALYSIS

### A.  Defendant's Motion to Dismiss

The Defendant makes four arguments in support of her Motion to Dismiss. When presented with similar if not identical facts, multiple courts from this District as well as the Western District of Kentucky have considered and rejected the precise arguments the Defendant now makes. In addition, the Sixth Circuit and other Circuits have previously heard, and also rejected, many of the Defendant's arguments. Based on the overwhelming weight of the relevant precedent and lack of any novel, meritorious arguments, this Court will likewise deny the Defendant's motion.

### i.    *12(b)(1) Subject Matter Jurisdiction*

First, the Defendant asserts that this Court lacks subject matter jurisdiction under *Vaden v. Discover Bank*, 556 U.S. 49 (2009). She asserts that this Court must "look through" to the underlying controversy, the state court action, and take the citizenship of the Administrators into account when evaluating subject matter jurisdiction. Since both the Administrators and the Defendant are Kentucky residents, she asserts there is a lack of

3

complete diversity. Contrary to the Defendant's claims, *Vaden* does not compel a "look through" analysis in a diversity case.

As both parties explain, in *Vaden* a credit card company sued a cardholder for past-due charges and the cardholder asserted counterclaims against the company. 556 U.S. at 54. The credit card company defended the counter claims by arguing that they were preempted by federal banking law. *Id.* It filed a motion in federal court to compel arbitration of the cardholder's counterclaims. *Id.* To determine whether there was federal jurisdiction to hear the case, the Supreme Court held that a federal court may "look through … to determine whether [the petition] is predicated on an action that 'arises under' federal law." *Id.* at 61.Thus, *Vaden* permits a federal court to evaluate its jurisdiction by examining the underlying state court controversy to determine whether a federal question exists.

In *Northport Health Services of Arkansas v. Rutherford*, 605 F.3d 483 (8th Cir. 2010), the Eighth Circuit held that *Vaden* applies only to cases involving federal question jurisdiction. Under circumstances that were nearly identical to those in the present matter, the Court concluded that *Vaden* does not apply to diversity cases. *Id.* at 491. In fact, the Eighth Circuit stated that the Defendants in that case "distorted the Supreme Court's decision in *Vaden*" by asserting that it extended to diversity cases. *Id* at 488.

The Western District of Kentucky adopted the Eighth Circuit's "well-reasoned analysis in *Northport*," stating:

> … the makeup of the parties in the underlying controversy is irrelevant for the determination of whether or not diversity jurisdiction exists. The determinative inquiry is the makeup of the parties before this Court. The parties presently before the Court, which does not include the administrators, are diverse. Therefore, this Court has subject-matter jurisdiction on the basis of diversity.

4

*Sun Healthcare Grp., Inc. v. Dowdy*, No. 5:13-CV-00169-TBR, 2014 WL 790916, at *5 (W.D. Ky. Feb. 26, 2014). Multiple other courts within this District, including this Court, have also previously concluded that *Vaden* does not apply to diversity cases. *Brookdale Sr. Living Inc. v. Stacy,* 27 F. Supp. 3d 776, 781 (E.D. Ky. 2014); *GGNSC Frankfort, LLC v. Tracy,* No. CIV. 14-30-GFVT, 2015 WL 1481149, at *3 (E.D. Ky. Mar. 31, 2015); *Richmond Health Facilities-Kenwood, LP v. Nichols*, No. CIV.A. 5:14-141-DCR, 2014 WL 4063823, at *1 (E.D. Ky. Aug. 13, 2014); *Brookdale Senior Living, Inc. v. Caudill*, No. CIV.A. 5:14-098-DCR, 2014 WL 3420783, at *1 (E.D. Ky. July 10, 2014). Put simply, *Vaden* is limited to cases involving federal question jurisdiction.

Jurisdiction in this case is based on diversity. Accordingly, this Court will not look through to the parties in the underlying state action to determine whether there is complete diversity of citizenship. The parties named in the case presently before this Court are diverse. Therefore, this Court has subject matter jurisdiction and the case will not be dismissed under Rule 12(b)(1).

*ii.*    *12(b)(7) Failure to Join Indispensable Parties*

The Defendant argues that the Administrators of Richmond Place are indispensable parties to this action under Rule 19, and that the Plaintiffs' failure to join them warrants dismissal.

"Rule 19 of the Federal Rules of Civil Procedure establishes a three-step analysis for determining whether a case should proceed in the absence of a particular party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001). The first step is to determine whether a party not joined is necessary under Rule 19(a). *Id.* If the party is necessary, the court must next determine whether joinder is feasible, considering whether the party is subject to personal jurisdiction and if joinder will destroy the court's subject-matter

jurisdiction. *Id.* Finally, if joinder will destroy subject-matter jurisdiction—for instance, through joinder of a non-diverse party—the court must examine whether the party is "indispensable." *Id.*

This Court must first consider whether the Administrators are necessary parties. They are necessary parties if they "claim[ ] an interest relating to the subject of the action and [are] so situated that the disposition of the action in [their] absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(2)(ii).

The Administrators are necessary parties to this action. *See PaineWebber, Inc. v. Cohen, 276 F.3d 197, 201 (6th Cir. 2001)*; *Golden Gate Nat. Senior Care, LLC v. Addington*, No. 14-CV-327-JMH, 2015 WL 1526135, at *4-5 (E.D. Ky. Apr. 3, 2015). The arbitration agreement can be interpreted to extend to the Administrators. The enforceability of the agreement is the issue before this Court. Therefore, the Administrators have an interest in this action. If this Court and the state court reached different conclusions regarding the enforceability of the agreement, the Defendant could be forced to arbitrate with the Plaintiffs and litigate the claims against the Administrators before the state court. Therefore, the Defendant is subject to a substantial risk of incurring inconsistent procedural remedies, meaning that the Administrators are considered necessary parties to this action.

If the non-joined party cannot be feasibly joined and is indispensable under Rule 19(b), the court must dismiss the action; however, absence of a merely necessary party does not compel dismissal. In other words, the Plaintiffs' failure to join non-diverse parties from the related state court action could not, alone, necessitate dismissal:

> Rule 19 deals with what were historically known as "necessary" and "indispensable" parties. The terms "necessary" and "indispensable" are terms of art in jurisprudence concerning

> Rule 19, and "necessary" refers to a party who should be joined
> if feasible, while "indispensable" refers to a party whose
> participation is so important to the resolution of the case that,
> if the joinder of the party is not feasible, the suit must be
> dismissed. If a necessary party cannot be joined without
> divesting the court of subject-matter jurisdiction, the Rule
> provides additional criteria for determining whether that party
> is indispensable, but if the court finds that the party is
> anything less than indispensable, the case proceeds without
> that party, and if, on the other hand, the court finds that the
> litigation cannot proceed in the party's absence, the court must
> dismiss the case.

*GGNSC Vanceburg, LLC, v. Hanley*, Civil Action No. 13–106–HRW, 2014 WL 1333204, *3
(E.D.Ky. Mar.28, 2014). The finding that the Administrators are necessary parties does not
end the inquiry.

Turning to the second step, feasibility, it is clear that joining the Administrators,
who are both Kentucky residents, would destroy complete diversity and divest this Court of
subject-matter jurisdiction.

Given that their joinder would destroy complete diversity, this Court must address
whether the Administrators are indispensable such that the action must be dismissed
rather than proceed without them. Under Rule 19(b), "the court must determine whether,
in equity and good conscience, the action should proceed among the existing parties or
should be dismissed." A party is neither necessary nor indispensable simply because they
are an alleged joint tortfeasor. *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 8 (1990). Rule
19(b) provides four factors this Court must evaluate: (1) the extent to which a judgment
rendered in the person's absence might prejudice that person or the existing parties; (2) the
extent to which any prejudice could be lessened or avoided by protective provisions in the
judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the
person's absence would be adequate; and (4) whether the plaintiff would have an adequate
remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

7

The Sixth Circuit considered arguments similar to those the Defendant now makes in *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200-06 (6th Cir. 2001) and held that non-diverse individual Defendants involved were not indispensable parties in a parallel federal court action to compel arbitration. In *PaineWebber*, the plaintiff sought to compel the heirs of its former employee to submit their state-law tort claims to arbitration. Like the instant case, the plaintiff in *PaineWebber* filed a diversity action to compel arbitration in federal court and, as here, the defendant objected to the suit on the grounds that a non-diverse individual sued in the underlying state action was indispensable. *Id*. The Sixth Circuit weighed the Rule 19(b) factors and rejected the defendant's argument, stating:

> Although we acknowledge the seriousness of [the defendant's] concerns, his characterization of the risks fails to take into account several important factors. These considerations indicate that the potential prejudice to [the defendant] or [the nonjoined party] if this action proceeds without [the nonjoined party] is minimal.
>
> As an initial matter, the possibility of having to proceed simultaneously in both state and federal court is a direct result of [the defendant's] decision to file suit naming [the plaintiff] and [the nonjoined party] in state court rather than to demand arbitration under the [parties'] Agreement.
> . . . .
> Even if the parallel proceedings were not the result of [the defendant's] pending state court action, the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration.
> . . . .
> [The possibility that] the federal and state courts will reach conflicting interpretations of the arbitration clauses does not present the degree of prejudice necessary to support a conclusion that [the nonjoined party] is an indispensable party.

*Id*. at 202–03 (internal citations omitted).

Applying the *PaineWebber* analysis, district courts within this Circuit have held that nursing-home administrators were not indispensable parties, notwithstanding the administrator's status as a co-defendant in the underlying state-tort action. *See, e.g.,*

8

*Brookdale Sr. Living Inc. v. Stacy*, 27 F. Supp. 3d 776 (E.D. Ky. 2014); *GGNSC Louisville Hillcreek, LLC, v. Warner*, 2013 WL 6796421, at *3–4 (W.D. Ky. December 19, 2013) (finding that "on balance, the factors do not dictate that the Court find [the administrator] is an indispensable party"); *Golden Gate Nat. Senior Care, LLC v. Addington*, No. 14-CV-327-JMH, 2015 WL 1526135, at *5 (E.D. Ky. Apr. 3, 2015).

In addition, the Eighth Circuit recognized:

> In the arbitration context, to our knowledge every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration. *See Brown v. Pac. Life Ins. Co.,* 462 F.3d 384, 393–94 (5th Cir.2006); *Am. Gen. Life,* 429 F.3d at 92–93; *PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 202–06 (6th Cir.2001); *MS Dealer Serv. Corp.,* 177 F.3d at 946; *Distajo,* 66 F.3d at 446; *Bio–Analytical Servs., Inc. v. Edgewater Hosp., Inc.* 565 F.2d 450, 453 & n. 3 (7th Cir.1977). We agree with these decisions. We find the contrary ruling in *Cytec Industries, Inc. v. Powell,* 630 F.Supp.2d 680, 686–87 & n. 2 (N.D.W.Va.2009), unpersuasive.

*Northport*, 605 F.3d at 491.

The brunt of the Defendant's argument on dispensability is that "[b]ecause the non-corporate entities are beneficiaries of the exact same ADR Agreement as Plaintiffs, and because the actions of Plaintiffs and non-corporate entities are intertwined in Defendant's claims in the underlying controversy, the non-corporate entities are an indispensable party in this case." [DE 4-1 at 22.] While that is true in the present matter, it was also true in *PaineWebber*, *Warner*, and *Addington*, yet those courts held that the non-joined individuals were not indispensable. The fact that the Administrators are covered by the arbitration agreement makes them necessary, but not indispensable, parties. Furthermore, a party is not indispensable simply because it is an alleged joint tortfeasor. *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 8 (1990). Thus, the Defendant's assertion that "[a]ll parties named as

9

Defendants in the State action acted in concert and contributed to Larry Trimmer's injuries pain, and humiliation," does not require a finding that the Administrators are indispensable.

This Circuit's precedent is clear. The possibility of inconsistent rulings coupled with the burden on the defendant in pursuing duplicative litigation is not sufficiently prejudicial to find a party indispensable. *PaineWebber*, 276 F.3d at 202–03. Under analogous circumstances, other district courts have rejected the argument that nursing home administrators are indispensable parties. Those district court decisions are not distinguished from the present matter in any significant way. Thus, this Court finds that neither of the Administrators are indispensable under Rule 19(b) and this action may proceed without them.

### iii.    *Colorado River Abstention*

Next, the Defendant asks that the Court abstain from exercising jurisdiction in this case under the *Colorado River* doctrine because similar litigation is pending in state court.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River Water Conservation Dist.,* 424 U.S. 800, 813 (1976), because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Id.* at 817. Abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Id.* at 813. One court described the circumstances in which abstention is appropriate as follows:

> Under Colorado River, the threshold issue is whether there are parallel proceedings in state court. *Crawley v. Hamilton Cnty. Comm'rs,* 744 F.2d 28, 31 (6th Cir.1984). Once a court has determined there are parallel proceedings, the Supreme Court identified eight factors that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of state court. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir.2001). Those factors are:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Id.*

*GGNSC Vanceburg, LLC, v. Taulbee*, Civil Action No. 5:13–cv–71–KSF, 2013 WL 4041174, *2 (E.D.Ky. Dec.19, 2013). Importantly, "the balance [is to be] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 16 (1983).

A plethora of courts in this district have refused to abstain under circumstances that are substantially similar to those found in this case. *Golden Gate Nat. Senior Care, LLC v. Addington*, No. 14-CV-327-JMH, 2015 WL 1526135, at *5 (E.D. Ky. Apr. 3, 2015); *Preferred Care, Inc. v. Belcher,* 5:14–cv–107–JMH, Memorandum Opinion and Order, DE 9 (E.D.Ky. March 31, 2015); *Richmond Health Facilities–Kenwood, LP v. Nichols,* Civil Action No. 5:14–141–DCR, 2014 WL 4063823 (E.D.Ky. Aug.13, 2014); *Brookdale Senior Living, Inc. v. Caudill,* Civil Action No. 5:14–098–DCR; 2014 WL 3420783 (E.D.Ky. July 10, 2014); *GGNSC Vanceburg, LLC, v. Hanley,* Civil Action No. 0:13–106–HRW, 2014 WL 1333204 (E.D.Ky. Mar.28, 2014); *GGNSC Vanceburg, LLC, v. Taulbee,* Civil Action No. 5:13–cv–71–KSF, 2013 WL 4041174 (E.D.Ky. Dec.19, 2013). The Plaintiffs cite additional cases from the Western District in which courts have likewise declined to abstain. [DE 5 at 18-19.]

It is clear that abstention under *Colorado River* is not warranted in this case. First, the state court has not assumed jurisdiction over any res or property. Second, nothing indicates that this Court would be less convenient, as the Defendant filed the state court action in the Fayette Circuit Court. Third, the desire to avoid piecemeal litigation is insufficient to overcome a strong federal policy in favor of arbitration. *PaineWebber*, 276

F.3d at 207. Fourth, while the state court proceeding was filed shortly before the present action, the time difference is minor. Moreover, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. The state court matter, according to the Plaintiffs, has not proceeded beyond the initial pleadings. [DE 5 at 16.] Fifth, while the Defendant is challenging the enforceability of the arbitration agreement on state law grounds, the Sixth Circuit has held that where the FAA applies, this factor tilts in favor of a court exercising jurisdiction. *PaineWebber*, 276 F.3d at 208. The sixth factor is the strongest element favoring abstention, as the state court is adequate to protect the Plaintiffs' rights because a state court is bound by the requirements of the FAA under the Supremacy Clause. *Golden Gate*, 2015 WL 1526135 at *6. The seventh factor is similar to the fourth factor, and both weigh in favor of exercising jurisdiction because there is no meaningful difference in the progress of the state and federal actions in this matter. Finally, while there is concurrent jurisdiction, the eighth factor favors abstention only marginally, if at all. *Id.* at 7. The existence of concurrent jurisdiction is "insufficient to justify abstention" under the circumstances. *PaineWebber*, 276 F.3d at 208-09.

It is clear that this case does not present the type of exceptional circumstances that would justify abstention. This Court sees no reason to depart from the well-reasoned decisions of other courts in this District that also refused to abstain.

### iv.   *12(b)(6) Failure to State a Claim*

Finally, the Defendant asserts that the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. They offer three reasons in support: (1) the arbitration agreement does not evidence a contract involving interstate commerce; (2) the agreement was signed by someone other than the resident; and (3) the agreement is unenforceable because it is unconscionable and void as against public

policy. [DE 4-1 at 27.] None of these arguments convinces the Court that dismissal under Rule 12(b)(6) is appropriate.

The Defendant's first argument relates to the scope of the FAA. The FAA applies to "contract[s] evidencing a transaction involving commerce," 9 U.S.C. § 2, and extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice … subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). The Defendant asserts that the arbitration agreement involved in this case is part of a wholly intrastate transaction between a Kentucky citizen and a care facility located within Kentucky in which all the services were rendered within the state. [DE 4-1 at 29.] According to the Defendants, there is no transaction involving commerce, so the FAA does not apply.

As other courts have found, this agreement "clearly falls within the scope of the FAA." *Addington*, 2015 WL 1526135, at *5. "The arbitration agreement in this case is a component of a larger contract that evidences a transaction involving interstate commerce." *Brookdale Sr. Living Inc. v. Stacy*, 27 F. Supp. 3d 776, 792 (E.D. Ky. 2014). Most obviously, "[t]he food, medicine, and durable medical supplies that [the Defendants] provided must come from somewhere." *Id.* at 792 (quoting *Warner*, 2013 WL 6796421 at *8). Furthermore, the general activity of providing healthcare, even if the actual provision of services in this instance occurred solely within Kentucky, is undoubtedly "the kind of activity that in the aggregate is subject to federal control under the Commerce Clause." *Id.*

Second, the Defendant argues that the arbitration agreement is void because it was signed by Larry Trimmer's guardian, Cindy Walker, who lacked authority to execute such an agreement on his behalf. [DE 4-1 at 29-30.] Recently, the Court of Appeals of Kentucky held that a guardian has authority to execute an arbitration agreement with a nursing

home on behalf of her ward. *LP Pikeville, LLC v. Wright,* No. 2013-CA-000959-MR, 2014 WL 1345293 (Ky. Ct. App. Apr. 4, 2014) ("Therefore, we conclude that the guardian has the authority to enter into collateral agreements which may affect the jural rights of her ward. Since [the guardian] had the authority to enter into the arbitration agreement on [the ward's] behalf….). This decision clearly indicates that Cindy Walker had authority to execute the arbitration agreement as Mr. Trimmer's guardian, and dispenses with the Defendant's second argument.

Third, the Defendant argues that the arbitration agreement is unconscionable and void as against public policy. She asserts that the agreement is unconscionable because it "is part of a mass-produced, boiler-plate, pre-printed document" that was "included with lengthy admissions agreements" and signed during the "overwhelming experience" of entering a nursing facility. [DE 4-1 at 30.] She further points to the "obviously gross disparity of bargaining power" and perceived inadequacies of arbitration in a personal injury case. [DE 4-1 at 31.]

The Defendant's claim that the agreement is unconscionable must be rejected. Under Kentucky law, "[t]he doctrine [of unconscionability] is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Conseco Fin. Servicing Corp. v. Wilder,* 47 S.W.3d 335, 341–42 (Ky.Ct.App.2001). If the fact that a contract is "lengthy and cumbersome," contains "boiler-plate" language, and was signed during a stressful experience is enough to declare a contract unconscionable, then few modern contracts would be enforceable. Furthermore, a disparity of bargaining power does not automatically rise to the level of unconscionability. *Conseco,* 47 S.W.3d at 341-42. While the Defendant asserts that arbitration will be more costly and truncate discovery, that does

14

not make the agreement unconscionable, as the Sixth Circuit has recognized that "[t]he FAA was designed to … provide parties with a  speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see also Conseco,* 47 S.W.3d at 344 ("The [Appellees'] contention that their arbitration clause is unfairly one-sided rests similarly on a presumption that arbitration will not afford them an adequate opportunity to vindicate their substantive claims. Under both the FAA and Kentucky's UAA, such a presumption is not a proper basis for refusing enforcement of an arbitration clause.") This Court must note yet again that a multitude of other district courts considering similar arbitration clauses in the nursing context have refused to find the agreements unconscionable. *See, e.g., Golden Gate Nat'l. Senior Care, LLC v. Addington*, 2015 WL 1526135, *10-11 (E.D. Ky. 2015); *Brookdale Sr. Living Inc. v. Stacy,* 27 F. Supp. 3d 776, 789 (E.D. Ky. 2014); *Sun Healthcare Group, Inc. v. Dowdy,* 2014 WL 790916, *13-14 (W.D. Ky. 2014); *GGNSC Louisville Hillcreek, LLC v. Warner*, 2013 WL 6796421, *8-*10 (W.D. Ky. 2013); [DE 5 at 27-28] (collecting cases).

Finally, the arbitration agreement is not void as against public policy. It is well established that there exists "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi,* 132 S. Ct. 23, 25 (2011). The U.S. Supreme Court has held that arbitration agreements in the nursing facility context are not exempted from the FAA. *Marmet Health Care Ctr., Inc. v. Brown,* 132 S. Ct. 1201 (2012). Therefore, the arbitration agreement cannot be invalidated on public policy grounds.

In conclusion, none of the bases the Defendant asserts in support of the Motion to Dismiss have merit. Therefore, the Defendant's motion shall be denied.

### B.  Plaintiffs' Motion to Compel Arbitration

Turning to the Plaintiffs' Motion to Compel Arbitration, they request that this Court enforce the arbitration agreement by requiring the Defendant to arbitrate her state court

claims. It appears that the Plaintiffs do not specifically request an injunction of the state court proceedings within the motion itself, but they do include such relief in their proposed order. [DE 6-4.] They state, "Plaintiffs' Motion to Enjoin Defendant from proceeding further in the State Court Action or in venue other than the arbitration is GRANTED." [DE 6-4 at ¶ 3.] Furthermore, their Complaint seeks injunctive relief. [DE 1 at ¶¶ 25-29.] The Defendant styles her Response to the Plaintiffs' motion as a "Memorandum Response to Plaintiffs' Motion to Compel Arbitration and to Enjoin Defendant," and devotes half of her Response to arguing against an injunction. For these reasons, the Court is satisfied that the Plaintiffs also moved for injunctive relief.

"When considering a motion to ... compel arbitration under the" FAA, courts engage in a four-step analysis. *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir.2000). The first is to "determine whether the parties agreed to arbitrate." *Id.* If so, then the second step is to consider the scope of the agreement. *Id.* Third, "if federal statutory claims are asserted, [the Court] must consider whether Congress intended those claims to be nonarbitrable." *Id.* Finally, "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Id. See also Compuserve, Inc. v. Vigny Int'l Finance, Ltd.,* 760 F.Supp. 1273, 1278 (S.D.Ohio 1990). The Defendant only contests the first issue, which is whether the parties entered into a valid arbitration agreement.

In this case, the Plaintiffs satisfied their initial burden by presenting the arbitration agreement. This agreement provides, in pertinent part, that:

> Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Rehabilitation/Skilled Nursing Center, excluding any action for eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption, and/or voidability of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future,

16

> whether for statutory, compensatory or punitive damages, and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will <u>not</u> decide their case.**"

[DE 6-1, Exhibit A, Admission Agreement at p.12, ¶ VIII.A.1.] (emphasis in original). It is clear that the claims arising out of Mr. Trimmer's residency at the nursing facility that the Defendant alleges in her state court action, namely negligence, medical negligence, corporate negligence, and violations of long term care resident's rights, clearly fall within the broad scope of the signed arbitration agreement.

In the Response, the Defendant argues that the arbitration agreement is unenforceable because it was signed by Larry Trimmer's guardian, Cindy Walker, and that the agreement is unconscionable. [DE 7 at 4-6.] This Court has previously considered and rejected these arguments in ruling on the Defendant's Motion to Dismiss. *See supra* pp. 12-15. Thus, the arbitration agreement in this case is valid and enforceable. The Defendant's state court claims must be submitted to arbitration according to the agreement's terms.

Having found that the Defendant must submit the state law claims to arbitration, the question turns to whether this Court should enjoin the Defendant from pursuing a parallel action in state court. The Court finds that such an injunction is necessary, and the Defendant is enjoined from proceeding with the state-court action. "Although the FAA requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate, it does not specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth,* 288 F.3d at 893 (quoting *Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176, 1180 (11th Cir.1981)) (internal citations omitted). For this reason, "the district court's authority to enjoin state-court proceedings is subject to the

legal and equitable standards for injunctions generally, including the Anti-Injunction Act." *Id.* Pursuant to the Anti–Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, *or to protect or effectuate its judgments.*" 28 U.S.C. § 2283 (emphasis added).

An injunction in this case "properly falls within the exception for injunctions 'necessary to protect or effectuate [this Court's] judgments.' " *Great Earth,* 288 F.3d at 894. The Court has determined that the parties entered into a binding arbitration agreement covering the Defendant's claims. Having made such a determination and compelling the Defendant to submit to arbitration, it is necessary to enjoin the Defendant from pursing her claims in *any* alternative forum, including state court. Otherwise, the Defendant would be permitted to circumvent the arbitration agreement and in doing so, circumvent this Court's judgment compelling arbitration. Accordingly, the Court will order that the Defendant be enjoined from proceeding with her pending state-court action.

### III.   CONCLUSION

The parties entered into a binding arbitration agreement that applies to the claims the Defendant brought in the Fayette Circuit Court. Since the arbitration agreement is valid and enforceable, the Defendant must submit her state court claims to arbitration and is enjoined from proceeding with the pending state court action. Accordingly, the Court **HEREBY ORDERS** that:

1. The Defendant's Motion to Dismiss [DE 4] is **DENIED;**

2. The Plaintiffs' Motion to Compel Arbitration [DE 6] is **GRANTED;**

3. The Defendant is **COMPELLED** to submit her pending state court claims to arbitration according to the terms of the arbitration agreement and is **ENJOINED** from proceeding with her action in state court; and

4. The Court will **STAY** this proceeding until the conclusion of the ordered arbitration.

Dated March 29, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY